UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BOBBI EDWARDS et al., } | |
| } | |
| Plaintiffs, } | |
| } | |
| v. } | Case No.: 2:18-cv-01954-RDP |
| } | |
| KIM MASHEGO et al., } | |
| } | |
| Defendants. } | |

**MEMORANDUM OPINION**

This case is before the court on Defendants Kim Mashego, Corrine Matt, and Yolanda Barnes's (collectively, "Defendants") Motion to Dismiss (Doc. # 47) Plaintiff's Amended Complaint (Doc. # 46). The Motion has been fully briefed (*see* Docs. # 47, 49) and is ripe for decision. After careful review, and for the reasons stated below, Defendants' Motion (*see* Doc. # 47) is due to be granted.

**I.    Relevant Facts**[1]

This case involves a dispute surrounding a Dependency Petition filed by Defendants (who are each Shelby County Department of Human Resources ("SCDHR") employees), after receiving information about a potential child abuse case. Plaintiffs, Bobbi Edwards and Christopher Edwards (collectively, "Plaintiffs"), filed this action after their two children, K.E. and A.E., were removed from their home following an investigation by the SCDHR. Plaintiffs have sued each of the Defendants in their individual capacities. The facts set out in Plaintiffs' Amended Complaint area

---

[1] "A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merit of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true." *Mays v. U.S. Postal Serv.*, 928 F. Supp. 1552, 1557-58 (M.D. Ala. 1996). Thus, for the purpose of resolving the Motion to Dismiss (*see* Doc. # 47), the court treats the facts alleged in the Amended Complaint (Doc. # 46) as true.

1

as follows:

On February 22, 2016, Alyssa Partridge ("Partridge"), an employee of the SCDHR, contacted Plaintiffs at their home to inquire about an allegation of child abuse and/or neglect upon A.E. (Doc. # 46 at ¶ 8). The report stated that the father (Christopher) had slapped A.E. "on the face and hit her in the head because he was upset with her." (Doc. # 47-1 at 2). At the time Partridge made contact with Plaintiffs, the father was arrested and charged with misdemeanor possession of marijuana. (Doc. # 46 at ¶ 8).

During that same interaction, on February 22, 2016, Partridge and Plaintiffs executed[2] a "Safety Plan." This Safety Plan was an agreement between the SCDHR and Plaintiffs "with respect to certain terms and conditions regarding further activity and involvement" of both parties. (*Id.* ¶ 9). The Safety Plan mandated that K.E. and A.E. "would reside in the home with their mother [Bobbi] . . . and maternal grandmother," and the maternal grandmother would "supervise all contact." (*Id.*). The father "would not reside in the home with the children." (*Id.*). The Safety Plan further provided that the supervised contact between the mother and the children would continue until she completed a drug screen, and the father would be required to complete a substance abuse assessment. (*Id.*).

Plaintiffs further allege that on February 23, 2016 (the day after the Safety Plan was executed), Defendants, along with Partridge, held a "staffing meeting" and decided that the Safety Plan was not valid. (*Id.* ¶ 13). Defendants decided to file a Dependency Petition in the Shelby County Juvenile Court ("SCJC") in order to remove K.E. and A.E. from the custody of Plaintiffs and place them into a foster home. (*Id.*). Defendants authorized Partridge to file this petition with the SCJC requesting an emergency pick-up order, "which would allow the children to be taken

---

[2] The Amended Complaint indicates that all parties, including the maternal grandmother, agreed to and signed the Safety Plan. (Doc. # 46 at ¶¶ 9, 11).

into emergency protective custody and placed into a foster home." (*Id.* ¶ 14).

Plaintiffs claim that Defendants did not notify them of their decision and failed to disclose material facts regarding that decision. (*Id.* ¶ 15). Specifically, Plaintiffs allege that Defendants made untrue, false, misleading, and fraudulent misrepresentations to the SCJC in the Dependency Petition. (*Id.* ¶ 16). Plaintiffs allege that such misrepresented statements include: (1) "The worker attempted a Safety Plan with the mother stating that Mr. Edwards [the father] could not reside in the home and that all contact between the children and their mother would be supervised by maternal grandmother;"[3] (2) "Mrs. Edwards [the mother] was not agreeable in taking a drug screen and has not still screened;"[4] (3) "It was found on 2/23/16 that she (Bobbi Edwards) [the mother] had allowed the children to stay at their grandmother's, Johnnie Gernaat's house;"[5] (4) "Due to this, the agency has concerns that Ms. Edwards [the mother] is not protective;"[6] and (5) "Mrs. Gernaat [the maternal grandmother] also violated the Safety Plan by allowing this to happen and has not been protective."[7] (Doc. # 46 at ¶¶ 16(a)-(e)).

According to the Amended Complaint, based upon these misleading and fraudulent statements in the Dependency Petition, the SCJC entered the emergency pick-up order, and Defendants removed K.E. and A.E. from the custody of Plaintiffs and placed them into a temporary

---

[3] Plaintiffs take issue with the word "attempted," as they contend that the Safety Plan was completed. (Doc. # 46 at ¶ 16(a)).

[4] Plaintiffs challenge this statement, contending that the mother had agreed to take a drug screen, and that she did not refuse such a requirement. (Doc. # 46 at ¶ 16(b)).

[5] Plaintiffs challenge this statement as misleading because it "tends to convey the impression that [the mother] had violated the terms and conditions of the Safety Plan by allowing the children to stay at their grandmother's house." (Doc. # 46 at ¶ 16(c)).

[6] Plaintiffs contend that this statement is misleading because "it tends to convey the impression that [the mother] violated the Safety Plan and, consequently, is not willing or able to protect her children from [any] alleged risks." (Doc. # 46 at ¶ 16(d)).

[7] Plaintiffs assert that this statement is false because neither Plaintiffs nor the maternal grandmother violated the Safety Plan. (Doc. # 46 at ¶ 16(e)).

3

foster home. (*Id.* ¶ 17).

Subsequently, the cases involving K.E. and A.E. were litigated in the SCJC. (*Id.* ¶ 18). During the proceedings, K.E. and A.E. were placed in the temporary custody of their maternal grandmother. (*Id.* ¶ 18). On August 30, 2016, the SCJC Ordered the return of K.E. and A.E. to the custody of Plaintiffs. (*Id.*). On August 17, 2017, the SCJC dismissed the petitions filed by SCDHR. (*Id.*).

On October 18, 2018, Plaintiffs filed suit in the Circuit Court of Shelby County. (Doc. # 1 at 10). On November 28, 2018, Defendants removed this case to this court. On January 7, 2020, Plaintiffs filed their Second Amended Complaint. (Doc. # 46). Plaintiffs advance eight counts against Defendants in their individual capacities: (1) negligence and wantonness; (2) suppression of material fact; (3) negligent/wanton training and supervision (against Defendants Mashego and Matt); (4) outrage/intentional infliction of emotional distress; (5) malicious prosecution; (6) abuse of process; (7) civil conspiracy; and (8) damages pursuant to 42 U.S.C. § 1983. (*Id.* at 7-24).

## II.    Standard of Review

Defendants' Motion seeks dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). But, the court only addresses the standards of review that apply under Rule 12(b)(1) because it does not address Defendants' Rule 12(b)(6) arguments.

Under Rule 12(b)(1), an attack on subject matter jurisdiction is either facial or factual. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). Facial attacks "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." Id. at 1259; *Ex Parte Safeway Ins. Co. of Ala., Inc.*, 990 So. 2d 344, 349 (Ala. 2008) ("If a defendant mounts a 'facial' challenge to the legal sufficiency of the plaintiff's jurisdictional

4

allegations, the court must accept as true the allegations in the complaint and consider the factual allegations of the complaint in the light most favorable to the non-moving party." (citation omitted)).

Factual attacks, on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings." *Id.* at 1529. When the challenge is a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)); *Ex Parte Safeway*, 990 So. 2d at 350 ("[A] court deciding a Rule 12(b)(1) motion asserting a factual challenge 'must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss.'") (quotation omitted).

Here, Defendants advance a factual attack on the court's subject matter jurisdiction. (Doc. # 20 at 7). Both Plaintiffs and Defendants seek to rely on Partridge's Dependency Petition and the Safety Plan in an effort to further their arguments. Both documents are extrinsic evidence. Generally, a "district court . . . must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint." *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005) (citing Fed. R. Civ. P. 12(b)). However, in *Horsley v. Feldt*, the Eleventh Circuit held that a "court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim[,] and (2) undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

Here, Plaintiffs do not dispute the authenticity of the Dependency Petition or the Safety Plan filed by Defendants, and it is obviously central to their claims. Accordingly, the court may

5

consider and rely on this extrinsic evidence to determine whether subject matter jurisdiction does in fact exist.

## III. Analysis

In their Motion to Dismiss, Defendants argue that Plaintiffs' claims are barred by: qualified immunity, Eleventh Amendment immunity, state-agent immunity, and statutory immunity for child abuse removal. (Doc. # 47). Defendants also assert that the Amended Complaint fails to state a claim under Rule 12(b)(6) and fails to plead fraud with particularity under Rule 9(b). (*Id.*).

The court need not address every defense asserted by Defendants, nor must it address the merits of Plaintiffs' claims under Rule 12(b)(6) and Rule 9(b) because it concludes that Defendants are entitled to qualified immunity from Plaintiffs' § 1983 claim. Therefore, the federal claim against Defendants is due to be dismissed, and, under 28 U.S.C. § 1367, the state claims are due to be remanded to state court.

### A. Qualified Immunity

With respect to Plaintiffs' § 1983 claim, Defendants argue that Plaintiffs' claims are barred by the doctrine of qualified immunity. After careful review, the court agrees.

"The Supreme Court has stressed that qualified immunity represents an immunity from suit rather than a defense to liability, and that it should therefore be addressed in the earliest possible stage of a case." *Tomberlin v. Clark*, 1 F. Supp. 3d 1213, 1223-24 (N.D. Ala. 2014) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). "The doctrine of qualified immunity protects government officials [sued in their individual capacity] 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see Nelson v. Lott*, 330 F. Supp. 3d 1314, 1327 (N.D. Ala.

6

2018). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 555 U.S. at 231 (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004)); *see Jordan v. Doe*, 38 F.3d 1558, 1565 (11th Cir. 1994) ("[T]he protection of qualified immunity extends to "all but the plainly incompetent or those who knowingly violate the law.") (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In order for a state or local official to claim the protections of qualified immunity, she must show that she was acting within the scope of her discretionary authority, and her conduct must "not violate clearly established constitutional law." *Tomberlin*, 1 F. Supp. 3d at 1225; *Doe*, 38 F.3d at 1565.

If a state official is acting within the scope of her discretionary authority, then the court must follow a two-part framework. First, the court asks if the plaintiff has "sufficiently alleged a constitutional . . . violation." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1305 (11th Cir. 2009). "Without a . . . [constitutional] violation, there can be no violation of a clearly established right." *Mann*, 588 F.3d at 1305. Second, the court must determine "whether the constitutional violation was 'clearly established' on the date of the event leading to suit. The focus at this step of the analysis is on the question of whether the officer had 'fair notice' that his conduct was unlawful." *Nelson*, 330 F. Supp. 3d at 1330. A district court, when confronted with a qualified immunity motion, may address the prongs in sequential or reverse order, or address only one of them. Indeed, "[p]ursuant to the Supreme Court's decision in *Pearson v. Callahan*, a court is 'permitted to exercise [its] sound discretion' in deciding which prong of the qualified immunity defense to address first." *Thomas v. Buckner*, 2011 WL 4071948, at *8 (M.D. Ala. Sept. 13, 2011) (citing *Pearson v. Callahan*, 555 U.S. 223, 239 (2009)); *Tomberlin*, 1 F. Supp. 3d at 1224.

7

Here, it is undisputed that Defendants are state officials. Mashego is the Director of the SCDHR, and Matt and Barnes are employees of that agency. (Doc. # 46 at ¶¶ 5, 6, 7). Therefore, they are entitled to advance a qualified immunity defense only if the court concludes they were acting under their discretionary authority in removing A.E. and K.E. from their home.

### 1. Defendants Were Acting Under Their Discretionary Authority When They Filed the Dependency Petition

"[A] government official can prove [s]he acted within the scope of [her] discretionary authority by showing 'objective circumstances which would compel the conclusion that [her] actions were undertaken pursuant to the performance of [her] duties and within the scope of [her] authority.'" *Doe*, 38 F.3d at 1566 (quoting *Rich v. Dollar*, 841 F.2d 1558 (11th Cir. 1988)). In other words, taking the allegations in a compliant as true, a court "should ask whether the action complained of [if done for a proper purpose] is reasonably related to the official's normal duties." *Tomberlin*, 1 F. Supp. 3d at 1225; *Muhammad v. Bethel-Muhammad*, 2012 WL 1854676, *10 (S.D. Ala. May 21, 2012) (citation omitted). This determination is a "low hurdle" to clear. *Ross v. State of Ala.*, 15 F. Supp. 2d 1173, 1181 (M.D. Ala. 1998) (citation omitted).

Plaintiffs argue that Defendants were not acting under their discretionary authority when they authorized Partridge to file the Dependency Petition because they fraudulently mislead the SCJC to issue an emergency pick-up order. Such fraudulent conduct, Plaintiffs assert, is not covered under the umbrella of a state official's discretionary authority. However, this argument misunderstands the inquiry. The sole question is whether the filing of the Dependency Petition is "reasonably related" to Defendants' normal duties. And, to be sure, the answer is clearly yes. Defendants Mashego, Matt, and Barnes are employed by the SCDHR, and their duties encompass, among other things, child dependency investigations. *See e.g.*, *L.H. v. Lee Cty. Dept. of Human Res.*, 40 So. 2d 747, 748 (Ala. Civ. App. 2009); *K.A.B. v. J.D.B.*, 279 So. 3d 607, 610 (Ala. Civ.

App. 2018).

> Indeed, Alabama Code § 12-15-126 provides:
>
> If it appears from a sworn statement, written or verbal, presented to the juvenile court that a child needs to be placed in detention or shelter or other care, the juvenile court may issue a pick-up order that a law enforcement officer or other person authorized by this chapter shall at once take the child into custody and take him or her to the place of detention or shelter or other care designated by the juvenile court.

This is exactly what took place here. On February 23, 2016, the day after Defendants executed the Safety Plan, Defendants concluded that the Safety Plan was not valid and authorized Partridge to file a (sworn) Dependency Petition with an SCJC Juvenile Court Intake Officer requesting an emergency pick-up order because Defendants believed that A.E. was in need of care or supervision because the "parent . . . subject[ed] the child . . . in the household to abuse, as defined in Section 12-15-301 or neglect as defined in Section 12-15-301, or allows the child to be so subjected." Specifically, the Petition stated[8]:

> On 2/22/16 the agency received a report regarding A.E. (D.O.B. X/X/05) and K.E. (D.O.B. X/X/07). The initial report state that A.E. disclosed that her father slapped her on the face and hit her in the head because he was upset with her. A.E. is diagnosed with autism and is considered a vulnerable child. When the worker arrived to the home to make contact with the children[, the father] was arrested for possession of marijuana. [He] admitted that he had just finished using right before his children got off the school bus, and the marijuana was in the living room where his 11 year old daughter was sitting. The worker attempted a safety plan with the mother stating that [the father] could not reside in the home and that all contact between the children and their mother would be supervised by maternal grandmother. [The mother] was not willing to agree to the safety plan without writing her complaints on the plan. [She] was also not agreeable in taking a drug screen, and has still not screened. It was found on 2/23/16 that she had allowed the children to stay at their grandmother[s] . . . house, and has allowed [the father] back into her home after being released from jail. Due to this, this agency has concerns that [the mother] is not protective. [The material grandmother] also violated the safety plan by allowing this to happen, and has not been protective.

---

[8] In order to protect the identity of Plaintiffs and their children, portions of the referenced Dependency Petition are redacted. However, Defendants filled in the relevant blanks in their Brief with initials, which is what the court has included in the above citation for ease of reference. (*See* Doc. # 47 at 23-24).

9

(Doc. # 47-1 at 2).

Alabama Code § 26-14-6 also authorized Defendants' conduct:

> A . . . designated employee of the State or County Department of Human Resources may take a child into protective custody . . . if the circumstances or conditions of the child are such that continuing in his or her place of residence or in the care and custody of the parent, guardian, custodian, or other person responsible for the child's care presents an imminent danger to that child's life or health.

Ala. Code § 26-14-6. Plaintiffs' own allegations make clear that Defendants removed K.E. and A.E. pursuant to a court order; therefore, the SCJC was informed of the action at the time it took place. For these reasons, the court has no hesitation whatsoever in determining that Defendants were acting within their discretionary authority when they filed the Dependency Petition with the SCJC. *See* Ala. Code § 26-14-6; *Powell v. Georgia Dept. of Human Res.*, 114 F.3d 1074 (11th Cir. 1997) (holding that two Department of Family and Children Services caseworkers were performing discretionary duties when they investigated an allegation of child abuse).

### 2. Defendants Did Not Violate a Clearly Established Right

Because the court concludes that Defendants were acting within their discretionary authority when they directed Partridge to file the Dependency Petition, "the burden shifts to [Plaintiffs] to show that Defendants [are] not entitled to qualified immunity." *Jones v. Buckner*, 963 F. Supp. 2d 1267, 1275 (N.D. Ala. 2013) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003)). This burden is "not easily discharged." *Ross*, 15 F. Supp. at 1181 (quoting *Foy v. Holston*, 94 F.3d 1528, 15332 (11th Cir. 1996)).

As noted above, the court has discretion in deciding which prong of the qualified immunity defense to address first. *See Pearson*, 555 U.S. at 239-240. Based on the pleadings, the court is unable, at this stage of the litigation, to determine whether Plaintiffs have established a constitutional violation. However, the court can easily determine that Plaintiffs have wholly failed

to show, under these circumstances, that Defendants violated their "clearly established" constitutional rights when they requested the emergency pick-up order and thereafter temporarily removed their children.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that [her] conduct was unlawful in the situation he confronted." *Jones*, 963 F. Supp. 2d at 1275 (quoting *Saucier v. Katz,* 533 U.S. 194, 202 (2001)).

> A right may be clearly established for qualified immunity purposes in one of three ways: "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law."

*Maddox v. Stephens*, 727 F.3d 1109, 1121 (11th Cir. 2013) (citations omitted). Because the Eleventh Circuit has "held time and again that clearly established general principles of law will seldom if ever suffice to strip a defendant of qualified immunity, . . . qualified immunity can only be defeated 'where a clearly established legal principle applies with such "obvious clarity" that a reasonable government official in the defendants' position would have known that their actions were unlawful.'" *Id.* at 1276.

Here, neither party has proffered any case law that contains indistinguishable facts that clearly establish a constitutional right. Nor have the parties cited to a broad statement of principle within the Constitution that clearly establishes a constitutional right under these circumstances. While it is true that "parents have a constitutionally protected liberty interest in the care, custody and management of their children," this iteration of constitutional law is wholly insufficient to form the foundation of Plaintiffs' claim here. *Maddox*, 727 F.3d at 1118-19 (citations and quotations omitted). This is so because "not every wrong committed by a state actor rises to the

level of a constitutional tort, sufficient to trigger a substantive due process violation, as the Constitution does not protect against all encroachments by the state onto the interests of individuals." *Id.* at 1119 (internal quotation marks omitted). Thus, the court is left to decide whether Plaintiffs have shown that Defendants were on notice that their conduct would violate a clearly-established constitutional right of Plaintiffs. They have not.

Plaintiffs allege that Defendants violated their constitutional rights to privacy and due process of law by authorizing Partridge to file misleading and fraudulent statements to the SCJC, resulting in removal of their children. (Doc. # 46 at ¶¶ 98, 99, 100). Notably, "[v]iolations of the right to family association are determined by a balancing of competing interests, and [the Eleventh Circuit] ha[s] held that state officials who act to investigate or protect children where there are allegations of abuse almost never act within the contours of clearly established law." *Maddox*, 727 F.3d at 1121 (quoting *Foy*, 94 F.3d at 1537) (internal quotation marks omitted).

Even drawing all inferences in Plaintiffs' favor and accepting the allegations in the Second Amended Complaint as true,[9] the specific facts of this case warrant the conclusion that Defendants are entitled to qualified immunity on Plaintiffs' § 1983 claim.

Plaintiffs have alleged that, on February 22, 2016, Partridge, acting on behalf of SCHDR and under the authority of Defendants, went to the home of Plaintiffs on suspicion of child abuse. (Doc. # 47-1 at 2). While there, Partridge executed a Safety Plan with Plaintiffs (which was to be effective immediately). The Safety Plan noted as a safety threat that "one or both parents [could not] control [their] behavior." (Doc. # 47-2 at 1). In an effort to quell this threat, the children would reside in the home with their mother, and their maternal grandmother would supervise all contact.

---

[9] Importantly, a court "must make reasonable inferences in [the plaintiff's] favor, but [it is] not required to draw [the plaintiff's] inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005) (citations omitted).

12

(*Id.*). Additionally, upon his release from jail, the children's father would not reside in the home, and all contact with the children would be supervised until further assessments were completed. (*Id.*).

Although the Safety Plan had already been agreed to and implemented,[10] on February 23, 2016 at around 2:40 a.m., Defendants voided the Safety Plan and filed a Dependency Petition with the SCJC, requesting the "temporary care, custody[,] and control" of A.E. (Doc. # 47-1 at 1). Defendants discovered that the mother had "allowed the children to stay at their grandmother's house [(*i.e.*, the mother's house)], and has allowed [the father] back into [the] home after being released from jail"—a direct violation of the Safety Plan. (Doc. # 47-1 at 1-2). Therefore, because of the concern that neither the mother nor the maternal grandmother was "protective" of the children, Defendants believed it to be in the best interest of the children that they be placed into temporary custody. The Juvenile Court entered a pick-up order, and the children were removed from Plaintiffs' custody.

Based on these facts, there is no realistic scenario in which it could be said that Defendants' conduct was so egregious as to violate clearly established constitutional rights. They were operating on information gathered from their investigation regarding the welfare of the children, thus they had "reasonable grounds" to believe that "removal was necessary for the protection of the health and safety of the child[ren]." Ala. Code. § 12-15-306(a)(1); *see Croft v. Westmoreland Cty. Children and Youth Servs.*, 103 F.3d 1123, 1126 (3d Cir. 1997) (citing *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 517 (2d Cir. 1996) (finding no due process violation when a child was removed and when child welfare workers possessed an objectively reasonable basis for believing parental custody represented a threat to a child's health or safety) and *Thomason v. SCAN*

---

[10] Plaintiffs cite to no authority mandating that once entered into, a Safety Plan cannot be withdrawn.

*Volunteer Services, Inc.*, 85 F.3d 1365, 1371 (8th Cir. 1996) (holding that child care worker was entitled to qualified immunity in § 1983 action where child was removed on reasonable suspicion of child abuse)). While Plaintiffs argue otherwise in their Second Amended Complaint -- asserting that Defendants fraudulently mislead the SCJC to issue the emergency pick-up order -- such arguments are not entitled to be taken as true here. *See Iqbal*, 556 U.S. art 678 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation.") (citation and quotation omitted) (internal quotation marks omitted).

Consequently, Defendants are entitled to qualified immunity on Plaintiffs' § 1983 claim.

## B. Plaintiffs' State Law Claims

In addition to her § 1983 claim, Plaintiff alleged various state law claims: (1) negligence and wantonness; (2) suppression of material fact; (3) negligent/wanton training and supervision (against Defendants Mashego and Matt); (4) outrage/intentional infliction of emotional distress; (5) malicious prosecution; (6) abuse of process; and (7) civil conspiracy.

Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." However, § 1367(c) gives district courts discretion over whether to retain jurisdiction over state law claims when the federal claim is dismissed. *See* 28 U.S.C. 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction."); *see United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966); *Ingram v. Sch. Bd. of Miami-Dade Cty.*, 167 F. App'x 107, 108 (11th Cir. 2006) ("[I]f the federal claims are dismissed prior to trial,

*Gibbs* strongly encourages or even requires dismissal of state claims.") (quoting *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999)); *May v. Boyd Bros. Transp., Inc.*, 241 F. App'x 646, 647 (11th Cir. 2007) (citation omitted) ("[W]here the case was originally filed in state court and subsequently removed to federal court, precedent dictates that the district court should . . . remand[] the remaining claims to state court.").

In this case, removal jurisdiction was initially based on Plaintiffs' § 1983 claim. Notwithstanding the fact that all of Plaintiffs' claims arise under a "common nucleus of operative facts," *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006), because the § 1983 claim is due to be dismissed, the court concludes that it is unnecessary to continue to exercise jurisdiction over Plaintiffs' remaining state law claims. *See id.* at 745 (noting that under § 1367(c), "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Therefore, the remaining state law claims are due to be remanded back to the Shelby County Circuit Court.

## IV. Conclusion

For all the reasons discussed above, Defendants' Motion to Dismiss (Doc. # 47) is due to be granted and Plaintiffs' state law claims are due to be remanded back to the Shelby County Circuit Court.

**DONE** and **ORDERED** this April 13, 2020.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE